UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ENSCO OFFSHORE CO.                          CIVIL ACTION

VERSUS                                      NO. 10-1941

KENNETH LEE SALAZAR, ET AL                  SECTION "F"

<u>ORDER & REASONS</u>

Before the Court are several motions: (1) the plaintiff's motion for leave to amend its complaint; (2) the government's motion to dismiss for lack of jurisdiction and for failure to state a claim on which relief may be granted (or alternatively for summary judgment) on Counts IV, V, and VI; (3) the plaintiff's motion for preliminary injunction on Count IV.

The plaintiff's motion to amend its complaint is GRANTED. The government's motion to dismiss or for summary judgment is DENIED. The plaintiff's motion for a preliminary injunction is DENIED without prejudice.

## **Background**

By now, this case is well-known and its facts familiar; it is the second lawsuit that arises from the government's response to the appallingly catastrophic BP oil spill in the Gulf of Mexico. The plaintiff challenged both the first and second moratoriums on offshore deepwater drilling ordered by the Department of the Interior and the Bureau of Ocean Energy Management, Regulation, & Enforcement (BOEMRE) earlier this year.  The Court declared the

1

first moratorium unlawful and arbitrary and capricious; the second moratorium, twin to the first, was cancelled and lifted before the Court could rule on its validity.  The plaintiff also challenges a number of regulations imposed by BOEMRE and the Department of Interior, and complains that the government has wrongfully delayed the issuance of permits for deepwater drilling in the Gulf of Mexico after the spill.

The motions before the Court resonate from three counts of the plaintiff's amended complaint, addressed for the first time before this Court.  Counts IV, V, and VI all mount challenges under the Administrative Procedure Act.  Count IV urges that the government has unlawfully delayed issuance of permits for deepwater drilling even though the government announced the end of its ban after this Court's rulings.  Count V challenges the requirement of certain Development Operations Coordination Documents (DOCDs) in connection with development and production activities in areas of the Gulf of Mexico that are not adjacent to the State of Florida; plaintiff urges that the government has exceeded its authority under the APA and OCSLA.  Count VI challenges the government's requirements that each lessee obtain drilling permits for development and production drilling under an approved development and production plan or DOCD, also in violation of the APA and OCSLA.

The plaintiff also seeks leave to amend its complaint to narrow the scope of Count IV and add a new plaintiff, ATP Oil and

2

Gas Corporation, which is an operator engaged in the development and production of oil and natural gas, primarily in the outer Continental Shelf in the Gulf of Mexico.  ATP has entered into several oil and gas leases with the government and raises similar claims to Ensco.

## **<u>Law & Analysis</u>**

### **I.  Motion for leave to file second amended complaint**

*A.*

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  "Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic."  <u>In re Southmark Corp.</u>, 88 F.3d 311, 314 (5th Cir. 1996) (quotation marks and citation omitted).  Determination of when amendment should be permitted rests within the sound discretion of the trial court.  <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971); <u>Daves v. Payless Cashways, Inc.</u>, 661 F.2d 1022, 1024 (5th Cir. 1981).

In exercising its discretion, the Court considers several factors including "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment."

Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 268 (5th Cir. 2004). "In keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation." Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982). But "'[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time.'" In re Southmark Corp, 88 F.3d at 315 (quoting Daves, 661 F.2d at 1024).

*B.*

1.

The government does not object to the plaintiff's proposed amendment to narrow Count IV's scope, but it does object to the addition of ATP as a new party with additional claims at this stage of the proceedings. It asserts that the plaintiff's lack of diligence in seeking to amend its complaint justifies denying the plaintiff's motion. The government points out that the plaintiff's last amendment was in July 2010, and complains that plaintiff now, on the eve of oral argument on issues that will potentially be affected by the proposed amendment, seeks to amend its complaint. The government shrugs off important considerations of judicial economy and urges that denying leave to amend would pose no prejudice to either the plaintiff or to ATP.

2.

Plaintiff suggests that its request for a preliminary injunction on Count IV should now be limited to five specific permit applications identified prior to amendment. Because of its concession, plaintiff believes that there is no prejudice to the government in granting plaintiff's motion for leave to amend. Plaintiff also asserts that because the administrative record regarding Count IV has not yet been filed, prosecution of Count IV is necessarily in its infancy.

Plaintiff also rejects the government's suggestion that plaintiff has acted with undue delay. Because the second moratorium was lifted in October 2010, the argument is made, the substance of Count IV in the proposed second amended complaint could not even come to fruition until some time after then, when it became apparent to the plaintiff and to ATP that the government was not going to timely process permits for deepwater drilling activities that previously had been barred by the moratoriums.

Finally, plaintiff focuses on judicial economy and notes that both it and ATP will be prejudiced if ATP is not permitted to join this suit. Although ATP could file a separate suit, plaintiff believes it, ATP, and the Court would lose the efficiencies involved with litigating near-identical claims at the same time, making it far more costly for the plaintiff and ATP and imposing additional burdens on the Court.

*C.*

The Court agrees with the plaintiff and GRANTS its motion for leave to file its second amended complaint.  The record does not establish that the plaintiff acted with undue delay in seeking this amendment, which is narrow in scope.  The facts underlying this case continue to develop; indeed, it was not until the moratorium was lifted on October 12, 2010 that the full scope of Count IV became more than an abstraction.  As time passes, Count IV's allegations of a delayed permit process will either gain potence and momentum, or prove to be of lessening concern.  The narrowing of Count IV, along with the addition of ATP as a plaintiff and concomitant addition of its own claims related to Count IV, are proper at this time.

## II. Motion to dismiss or for summary judgment on Counts IV, V, and VI and motion for preliminary injunction on Count IV

*A.   Standards of Review*

1.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action for lack of subject-matter jurisdiction.  In a Rule 12(b)(1) motion, the Court "is empowered to consider matters of fact which may be in dispute," but the motion should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  In determining whether

6

jurisdiction exists, the Court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.  <u>Clark v. Tarrant Cnty.</u>, 798 F.2d 736, 741 (5th Cir. 1986).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  <u>Home Builders Ass'n of Miss., Inc. v. City of Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).  In a factual attack, the defendants submit evidence in support of their motion and the plaintiffs must prove by a preponderance of the evidence that the Court has subject matter jurisdiction.  <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981).  In weighing the evidence, the Court attaches no presumption of truthfulness to the plaintiff's allegations.  <u>Williamson v. Tucker</u>, 645 F.2d 404, 413 (5th Cir. 1981).

2.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted.[1]  Such a motion

---

[1]     In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" — that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief.  <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)).  The Court may also consider

7

"'is viewed with disfavor and is rarely granted.'"  <u>See</u> <u>Lowrey v.</u> <u>Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1940.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim for relief.  <u>Iqbal</u>, 129 S. Ct. at 1950.  First, the Court must identify pleadings that are conclusory and thus not entitled to the

---

matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  <u>See</u> <u>United States ex rel. Willard v. Humana Health Plan</u> <u>of Tex. Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

assumption of truth.  Id.  A corollary: legal conclusions "must be supported by factual allegations."  Id.  Second, for those pleadings that are more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief."  Id.

This facial plausibility standard is met when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible.  Twombley, 550 U.S. at 570); see also Iqbal, 129 S. Ct at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully").  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Iqbal, 129 S. Ct. at 1949 (internal quotations omitted).  In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

3.

As to summary judgment, Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses

no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  He must instead come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in

evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

4.

As the Court previously noted in the Hornbeck litigation, it is well settled that "preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion." Bluefield Water Ass'n v. City of Starkville, Miss., 577 F.3d 250, 253 (5th Cir. 2009) (quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 196 (5th Cir. 2003)); see also PCI Transport., Inc. v. Ft. Worth & W. R. R. Co., 418 F.3d 535, 545 (5th Cir. 2005).  The Court can issue an injunction only if the movant shows:

> (1) a substantial likelihood of prevailing on the merits;
> (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.

Ridgely v. FEMA, 512 F.3d 727, 734 (5th Cir. 2008).

"Speculative injury is not sufficient [to make a clear showing of irreparable harm]; there must be more than an unfounded fear on the part of the applicant." Holland Am. Ins. Co. v. Succession of Roy, 77 F.2d 992, 997 (5th Cir. 1985); see Wis. Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985) ("[Irreparable] injury must be both certain and great; it must be actual and not theoretical.").  Where the injury is merely "financial" and

11

"monetary compensation will make [the plaintiff] whole if [the plaintiff] prevails on the merits," there is no irreparable injury. Bluefield, 577 F.3d at 253.   However, the Court emphasizes that when the nature of economic "rights makes 'establishment of the dollar value of the loss . . . especially difficult or speculative,'" a finding of irreparable harm is appropriate. Allied Mktg. Group, Inc. v. CDL Mktg., Inc., 878 F.2d 806, 810 n.1 (5th Cir. 1989) (quoting Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 630 n.12 (5th Cir. 1985)).

### B.   Counts V & VI

#### 1.

Count V of plaintiff's second amended complaint states: "[b]y requiring [Development Operations Coordination Documents] in connection with development and production activities in areas of the Gulf of Mexico that are not adjacent to the State of Florida, the [Department of Interior] has exceeded its statutory authority and has acted in violation of the APA and OCSLA."   In support, plaintiff claims this challenge is "based on [the government's] improper imposition—without any statutory authority—of a requirement for lessees to submit Development Operations Coordination Documents for approval in connection with development and production activities in certain areas of the Gulf of Mexico. Congress has mandated that similar planning documents be submitted to the DOI for approval in connection with development and

production activities outside the Gulf of Mexico and has permitted the DOI to require such plans for development and production activities in areas of the Gulf of Mexico that are adjacent to the State of Florida.  Nowhere, however, has Congress authorized the [Department of Interior] to require such plans for other areas of the Gulf of Mexico."  Plaintiff concedes that Count V relates to a regulatory provision published in 1984.

Count VI states that "[b]y requiring lessees to obtain drilling permits for development and production drilling under an approved DPP or [Development Operations Coordination Document], the [Department of Interior] has exceeded its statutory authority and has acted in violation of the APA and OCSLA."  Plaintiff's complaint explains further:  this "claim is based on [the government's] [unlawful] imposition . . . of a requirement for lessees to obtain drilling permits for development and production activities."  Plaintiff also states that "Congress has authorized the [Department of Interior] to require drilling permits in connection with exploration activities, but has not authorized [it] to require such permits for development and production activities."  In doing so, plaintiff alleges, "the [Department of Interior] has imposed such requirements in violation of the law."  Plaintiff concedes that Count VI relates to a regulatory provision published in 1998.  Plaintiff alleges that both Counts V and VI arise from unlawful governmental action that took place after the April 20,

2010 explosion and resulting oil spill.  The government seizes upon the 1984 and 1998 events.

2.

The government challenges Counts V and VI on narrow grounds: it claims they are time-barred by virtue of the government's sovereign immunity.  The government views plaintiff's challenges in Counts V and VI as facial challenges and, as such, urges that the plaintiff's time to bring the challenge has passed.  The government urges that because the regulations plaintiff challenges were announced in 1984 and 1998, neither challenge is timely and should therefore be dismissed.  The plaintiff, on the other hand, urges that it brings an as-applied challenge arising from unlawful government action taking place in just the last several months and that, accordingly, the statute of limitations to raise these claims has not expired.

3.

Challenges under the APA are governed by the general statute of limitations set forth under 28 U.S.C. § 2401(a), which provides that every civil action against the United States is barred unless brought within six years of accrual.  Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv., 112 F.3d 1283, 1286-87 (5th Cir. 1997).  The "failure to sue the United States within the limitations period is not merely a waivable defense.  It operates to deprive federal courts of jurisdiction."  Id. at 1287.

Whether the limitations period has expired regarding plaintiff's challenges in Counts V and VI depends on whether the plaintiff raises a facial or an as-applied challenge.  <u>See</u> 28 U.S.C. 2401(a); 112 F.3d 1283, 1286-87.  As to facial challenges, the limitations period "begins to run when the agency publishes the regulation in the Federal Register."  112 F.3d at 1287.

An as-applied challenge to a regulation may take place "after the limitations period has expired, provided that the ground for the challenge is that the issuing agency exceeded its constitutional or statutory authority.  To sustain such a challenge, however, the claimant must show some direct, final agency action [under the APA] involving the particular plaintiff within six years of filing suit."  <u>Id.</u> at 1288; <u>see</u> 5 U.S.C. § 704.  "[A]bsent some 'final' action, the APA will not provide a cause of action to challenge agency decisions."  112 F.3d at 1288.  To determine when agency action is final,

> The Supreme Court has identified four factors . . . : (1) whether the challenged action is a definite statement of the agency's position, (2) whether the action has the status of law with penalties for non-compliance, (3) whether the impact on the plaintiff is direct and immediate, and (4) whether the agency expects immediate compliance.[2]

<u>Id.</u>

---

[2] On this record, the answer to all four questions is "yes."

4.

The Court finds that dismissal of Counts V and VI under both Rule 12(b)(1) and Rule 12(b)(6) based on sovereign immunity is unwarranted.  As stated in its complaint, plaintiff alleges illegality based on a novel application of preexisting regulations occurring in the last months—well within the government's limited six-year statutory waiver of sovereign immunity.  The plaintiff does not merely challenge the authority of the government to issue the regulations in question.  Plaintiff quite plainly challenges the government's application.

Under Rule 12(b)(1), the government has not shown that the "[C]ourt lacks the statutory or constitutional power to adjudicate the case" under Section 2401(a); plaintiff's claims, as alleged, do not deprive this Court of jurisdiction because they challenge the government's recent application of regulations well within the six-year limited waiver under Section 2401(a).  Similarly, under Rule 12(b)(6), the plaintiff has alleged "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;" the plaintiff has stated a claim that plausibly falls within the government's limited waiver of sovereign immunity.

Accordingly, the Court finds the plaintiff raises timely as-applied challenges which do not merit dismissal under either the Rule 12(b)(1) or the Rule 12(b)(6) standard.  The government's

motion to dismiss is DENIED.[3]

### C.  Count IV

#### 1.  OCSLA

The Outer Continental Shelf Lands Act governs federal offshore oil and gas leasing and declares as national policy that "the outer Continental Shelf is a vital national resource reserve held by the Federal Government for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs."  43 U.S.C. § 1332(3) (2006). OCSLA structures four distinct stages in the administrative process:  (1) formulation of a five-year leasing plan by the Secretary; (2) lease sales; (3) exploration by the lessees; and (4) development and production.  Sec'y of the Interior v. Cal., 464 U.S. 312, 337 (1984).  Plaintiff's challenge under Count IV centers on stage four.

In that stage, lessees must submit a development and production plan (DPP) or a development operations coordination document (DOCD).  The DPP or DOCD addresses the number and location of the production wells, the type of platform to be used, and how the oil and gas will be brought onshore for processing.  See 30 C.F.R. § 250.241-295.  If the DPP or DOCD is approved, before

---

[3]  The government's motion for summary judgment on Counts V and VI is also DENIED.  No briefing was provided to show why summary judgment should be granted on these counts.

drilling a well, whether an exploratory or a production well, an operator must first obtain BOEMRE's approval of an application for permission to drill (APD), 43 U.S.C. § 1340(d); 30 C.F.R. § 250.281; 30 C.F.R. § 250.410, or an application for a permit to modify.  30 C.F.R. § 250.465.  Upon receipt of an application, BOEMRE reviews the corresponding exploration or development plan to determine what conditions apply to the application or the well's proposed location.  BOEMRE also conducts an engineering review of the application to ensure the appropriateness of a drilling rig for the proposed well program,[4] 30 C.F.R. § 250.418, and reviews APDs to determine how the proposed operation satisfies the regulations in 30 C.F.R. part 250, which govern oil and gas operations on the outer Continental Shelf.[5]  See 30 CFR § 250.102(a).  In some cases,

---

[4]  The engineering review consists of, but is not limited to, a review of the proposed drilling procedure, well location, and directional program; geological and geophysical hazards; pore pressure and fracture gradient of the subsurface environment; wellbore design and schematic; design calculations for pressure containment during drilling and completion; cement volumes; and testing pressures for the well control equipment, casing, and casing shoe.  The engineering review is performed for shallow and deepwater drilling operations alike.  See 30 C.F.R. § 250.411-418.

[5]  These regulations establish binding performance standards, information and reporting requirements, testing requirements, and operational requirements.  This review includes an assessment of well casing setting depths determined by formation strength, predicted formation fluid pressure, drilling mud weight limits, and any anticipated subsurface hazards; effectiveness of well casing strength for pressure containment at its specified depth; effectiveness of cementing the well casing after successfully securing and isolating the hydrocarbon zones or any encountered subsurface hazards; and maintenance of well control by adjusting drilling mud properties and the use of well control

18

BOEMRE must also prepare an environmental assessment or environmental impact statement to comply with the National Environmental Policy Act.  See 42 U.S.C. § 4332(2)(C).

After reviewing an application for a permit to drill, BOEMRE ultimately either approves or denies the application.[6]   Neither the statute nor its implementing regulations dictate the speed with which BOEMRE must act, although Congress has expressed its approval of a thirty-day period within which the Secretary must approve the applicant's exploration plan.  See 43 U.S.C. § 1340(C)(1).

### 2.   Count IV

Count IV of plaintiff's second amended complaint states that

> Since October 12, 2010, Defendants have failed to issue a single drilling permit for any of the pending Ensco Permit Applications or ATP Permit Applications. For the following independent reasons, Defendants' delay in processing these Permit Applications is unreasonable . . . :
>
> a) First, by providing a 30-day time frame in which the [Department of Interior] must approve exploration plans in the OCSLA, Congress has clearly provided an "indication of the speed with which it expects the agency to proceed."  Congress neither required the APD process nor set out a specific time frame for that process.  Congress' 30-day timeframe for the DOI to approve the required exploration plan demonstrates that it cannot have intended to allow the DOI a longer period

---

equipment such as diverters and blowout preventers.  See 30 C.F.R. § 250.413-416.

[6]   It is BOEMRE's failure to either approve or deny outstanding applications for permits to drill that the plaintiff challenges in its second amended complaint.

to approve an APD, which the OCSLA does not even require, and which is in any event a secondary layer of approval. Moreover, the requirements for a valid exploration plan are, if anything, more onerous than the requirements for an APD (or for other Permit Applications), and thus there is no basis-even in the DOI's own regulations-for taking longer than 30 days to approve the Ensco Permit Applications and the ATP Permit Applications. Defendants' delay in processing these Permit Applications is also unreasonable in light of Defendants' prior practice of processing Permit Applications within two weeks.

b) Second, Defendants['] dilatory tactics are unreasonable because, if Defendants were permitted to delay indefinitely the processing of Permit Applications, it would eviscerate the OCSLA's suspension provision and undermine the protections that that provision affords lessees such as ATP.   As noted above, the OCSLA already contains a provision that allows Defendants to halt drilling in certain circumstances.   Because leases are of a limited duration, the OCSLA's suspension provision provides lessees with a critical protection to ensure that a suspension order does not diminish the value of their leases: It instructs that, when drilling is suspended, the DOI must extend the period of a lease affected by the suspension order "by a period equivalent to the period of such suspension or prohibition," unless the suspension is due to a negligent or willful violation.   Thus, Congress expressly protected leaseholders' interests by requiring an extension of the lease term in the event of a suspension (and also by requiring exploration plans to be acted upon within 30 days).   But if Defendants can halt drilling by indefinitely delaying the approval of Permit Applications, Defendants would not ever need to invoke the OCSLA's suspension provision, and lessees (such as ATP) would thus be denied the protection of a lease extension.   Allowing Defendants an unreasonable amount of time to process Permit Applications would essentially eviscerate

20

these provisions of the OCSLA.

c) Third, Defendants' delay is the result
of bad faith. Any finding that "a delay . . .
is the result of bad faith—that is, a delay
from improper reasons—is a delay that is *per
se* unreasonable." Defendants' delay is the
result of their bad faith attempts to avoid
judicial review in this case by, among other
things, purportedly lifting the Second
Deepwater Moratorium at a time when they had
no intention of issuing any drilling permits
for activities that had been barred by the
moratoria.[7]

As further support, plaintiff alleges its claim under Count IV

"is based on [the government's] delay—after the purported lifting

of the Second Deepwater Moratorium on October 12, 2010—in

processing applications for permits that would allow Ensco or ATP

to conduct drilling activities that had been barred by the

moratoria." "This delay in processing permitting applications,"

plaintiff alleges, "exceeds both the relevant approval periods set

out in the OCSLA and [the government's] past practices," "amounts

to an end-run around OCSLA's lease-suspension provision," and "is

the result of bad faith." The government stresses that the thirty-

day action period is not made expressly applicable to stage four

and that no special time periods bind the government's stage four

decision.

## 3. Jurisdiction

First, the government contests the plaintiff's standing to

raise this claim. As the Court has previously explained, it is

---

[7]   Internal citations and quotations removed.

tasked to act as a reviewing court in these cases. The Administrative Procedure Act authorizes judicial review of final agency action where there is no other adequate remedy in a court. 5 U.S.C. § 704; see id. § 702 ("A person suffering a legal wrong because of agency action . . . is entitled to judicial review thereof.").[8]  This right of review "applies universally 'except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" Bennett v. Spear, 520 U.S. 154, 174 (1997).  Standing in such cases is informed by the parameters of the litigant's interest in the controversy:  what has been characterized as the zone of interests test.

The APA "serv[es] a broad remedial purpose." Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 156 (1970). The zone of interests test as applied in APA cases is similarly broad.  See Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987). Even when the claimant "is not itself the subject of the contested regulatory action," standing under the zone of interests test fails to lie only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that

---

[8] The APA does not provide an implied grant of subject matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 107 (1977). However, the plaintiffs' claims of injury caused by the government's violation of OCSLA are subject to this Court's federal question jurisdiction. See 28 U.S.C. §1331.

it cannot reasonably be assured Congress intended to permit the suit." Id.  With these injunctions in mind, the Court finds that the plaintiff, directly affected by the government's alleged failure to timely issue permits, has standing to assert its claim based on plaintiff's assertions in its affidavit to its opposition to the government's motion.  In it, plaintiff asserts that it has suffered injury because the government's failure to act has prevented the plaintiff from commencing drilling operations and forcing it to accept reduced day rates under its drilling contracts.[9]

### 4.  Motion to dismiss on Count IV

*a.*

The government urges that the plaintiff has asserted an improper programmatic challenge:  the plaintiff purports to challenge an alleged practice of delay in the abstract rather than focus on any discrete permit application.  Because of this, the government believes that the plaintiff's claim is not cognizable. The relief sought, the government contends, would improperly inject the Court into the day-to-day management of BOEMRE's permitting program.  By challenging an alleged pattern and practice of delay in processing permit applications, the government believes that the

---

[9]   The plaintiff points to specific permit applications that are currently pending that directly relate to the plaintiff and that the government has failed to process these applications in a timely fashion.

plaintiff improperly requests open-ended improvement of BOEMRE's permitting program.

The plaintiff denies that Count IV is an improperly broad attempt to make wholesale improvements in a national permitting program that would require the Court to improperly entangle itself in BOEMRE's decision-making process.  Rather, it is argued, Count IV merely seeks an order from this Court that tells the government to make a decision on a small number of specific permit applications that directly affect Ensco or ATP.[10]  This, plaintiff asserts, is well within the province of the judiciary.

*b.*

The Administrative Procedure Act grants a cause of action if one "suffer[s] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.  Section 706(1) of the Administrative Procedure Act provides:  "The reviewing court shall . . . compel agency action withheld or unreasonably delayed."  5 U.S.C. § 706(1) (2006).  The failure to act, as contemplated by that section, is "properly understood as a failure to take . . .

_____

[10]  Under the proposed second amended complaint, Count IV is trained exclusively on the government's delay in processing only those few applications pending before the BOEMRE that relate to drilling rigs operated by Ensco or ATP.  Such a narrow challenge, plaintiff urges, is well within the bounds of a justiciable APA action, and certainly does not present the types of concerns, such as the threat of judicial entanglement in agency operations, that animate the prohibition on programmatic challenges.

agency actions (including their equivalents) . . .defined in §
551(13). <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55,
62 (2004); <u>see</u> <u>Sierra Club v. Peterson</u>, 228 F.3d 559, 565 (5th Cir.
2000) ("Absent a specific and final agency action, [courts] lack
jurisdiction to consider a challenge to agency conduct."). Section
551(13) defines final agency action as "the whole or a part of an
agency rule, order, license, sanction, [or] relief." 5 U.S.C. §
551(13). The term "license" includes "the whole or a part of an
agency permit." <u>Id.</u> at § 551(8). The statute's test itself
instructs that delay in issuing a license, or failure to issue a
license at all, may be a final agency action made reviewable by the
APA.

However, the Court approaches this issue with an overarching
sense of caution. Although "[f]ailures to act are sometimes
remediable under the APA," they are "not always" so. <u>SUWA</u>, 542
U.S. at 61. Section 706(1) "empowers a court only to compel an
agency 'to perform a ministerial or non-discretionary act,' or to
'take action upon a matter, without directing how it shall act.'"
<u>Id.</u> at 64 (quoting approvingly ATTORNEY'S GENERAL MANUAL ON THE
ADMINISTRATIVE PROCEDURE ACT 108 (1947)) (emphasis removed). A Section
706(1) claim therefore "can proceed only where a plaintiff asserts
that an agency failed to take a *discrete* agency action that it is
*required to take*." <u>Id.</u> (emphasis in original). "The limitation to

25

discrete agency action precludes . . . broad programmatic attack."[11] Id.; see Lujan, 497 U.S. 871, 890-93 (1990) ("[F]laws in the entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members."); Peterson, 228 F.3d at 566 (It is "clear that this prohibition is motivated by institutional limits on courts which constrain our review to narrow and concrete actual controversies"). And "[t]he limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law . . . [;] [t]hus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what that action must be." SUWA, 542 U.S. at 65.

The Court balances these competing injunctions and turns to Count IV.

*c.*

The Court finds that the plaintiffs do not launch a broad

---

[11] Broad programmatic attacks are sweeping, across-the-board challenges to agency programs or policy. See Lujan, 497 U.S. at 890. Examples of such sweeping challenges include challenges to a land withdrawal review program, see id., and to a program of timber management over which Congress granted agency broad discretion, see Sierra Club, 228 F.3d 559.

programmatic attack outside of the Court's review authority and instead, as it alleges in its second amended complaint, challenges discrete agency actions:  specifically, BOEMRE's failure to act on permit applications that affect them both.  The Court therefore DENIES the government's motion to dismiss on Count IV.  It is unclear, however, whether BOEMRE, through OCSLA or its regulations, must act on applications for permits to drill within a certain time period.  Before the oil spill, the plaintiff draws attention that applications were approved or denied on average in approximately two weeks; after the spill, plaintiff complains that no decisions on the permits are being made at all.  But whether permits must be granted or denied within a specific time frame, or what time frame is reasonable remains patently unclear.

     5.  Motion for preliminary injunction on Count IV

     Because what is a reasonable time frame and whether federal courts have the review authority to impose a time frame is inconclusive on this record, plaintiff fails thus far to establish by a preponderance of the evidence that it will, as Rule 65 instructs, suffer irreparable harm as a result of BOERME's failure to issue permits; for similar reasons, it fails to show how the public interest weighs in favor of granting a preliminary injunction because this Court's authority to order time-sensitive

27

permits needs more briefing.[12]   The plaintiff asserts that it has suffered and will continue to suffer irreparable harm as a result of BOEMRE's failure to issue permits.   The plaintiff's injury comes in various forms:   lost daily revenues and the loss of skilled labor, neither of which can or will be recovered, and the impending threat of rigs to leave the Gulf for places without similar limitations on drilling.   Though the Court readily agrees that these injuries are cognizable and could support a preliminary injunction if verified, the Court is troubled that, in law, plaintiff accords this Court impermissible APA review power.   Thus, the plaintiff has not yet met its burden for preliminary injunctive relief.   Its motion for preliminary injunction is therefore DENIED without prejudice.[13]

IT IS ORDERED: The plaintiff's motion for leave to file its second amended complaint is GRANTED.   The government's motion to

---

[12]   As noted, the government claims that the Secretary is not bound by any general time requirement in which to grant or reject any permit application; that the Secretary decides with reference to each discrete application when it is reasonable to act.

[13]   Perhaps evidence of the government's lack of bona fides, if so, will shed more light.   It may also be that the parties can better address this Court's authority to impose a reasonable time frame regarding the parameters of the permit process.   Thus far, the record is inconclusive on these issues. Maybe additional motion practice or briefing could be helpful. However, the Court is obligated to say that the government's steps after the BP spill have seemingly visited an economic dilemma on the Gulf region for almost a year now, and resolution of this dispute should be expedited and resolved for all concerned.

dismiss or for summary judgment on Counts IV, V, and VI is DENIED. The plaintiff's motion for a preliminary injunction on Count IV is DENIED.

New Orleans, Louisiana, January 13, 2011.

MARTIN L.C. FELDMAN
UNITED STATES DISTRICT JUDGE