UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENSCO OFFSHORE CO., ET AL | CIVIL ACTION |
| VERSUS | NO. 10-1941 |
| KENNETH LEE SALAZAR, ET AL | SECTION "F" |

ORDER & REASONS

Before the Court are cross-motions for summary judgment on Count IV of the plaintiffs' second amended complaint. Because of this Court's prior orders and for the following reasons, the Court GRANTS the plaintiffs' motion and DENIES the government's motion.

**Background**

For the past year, the government's administrative decisions arising out of the disastrous Deepwater Horizon oil spill suspended deepwater drilling in the Gulf of Mexico. This Court's review of those administrative decisions is nearing its end. Only Count IV, challenging the government's unreasonable delays in its processing of nine deepwater drilling permit applications, and Count V, challenging the government's requirement of a planning document in connection with production and development activities in the western Gulf of Mexico, remain.[1] Both parties move for summary judgment on Count IV.

This is not the Court's first encounter with Count IV. In its

---

[1] Count V has been partially resolved through motion practice. Further motion practice on Count V is forthcoming.

January 13, 2011 Order, the Court held that the plaintiff, Ensco Offshore Company, has prudential standing to assert its challenge to the government's delay in processing deepwater drilling permit applications in which it holds a significant stake. The Court also held that both Ensco and ATP stated cognizable claims because Count IV challenges delays on specific permit applications, rather than the entire program of permitting. And, although the Court initially denied the plaintiffs' motion for a preliminary injunction on Count IV, the Court vacated its decision on February 17, 2011 and imposed a preliminary injunction. The Court held that the Outer Continental Shelf Lands Act (OCSLA) and the Administrative Procedure Act (APA) imposed on the federal government a non-discretionary duty to act on the permit applications within a reasonable time and then ordered the government to grant or deny five specific permit applications within thirty days. (The Order was amended to add three more permit applications on March 1.) The Court held that thirty days was a reasonable time under the law. The Court's Order of preliminary injunction currently is on appeal; the U.S. Court of Appeals for the Fifth Circuit has stayed the preliminary injunction pending its expedited review.

    The permit applications underlying Count IV are:

- *Cobalt International Energy, L.P.'s permit application to drill GC 814 Well No. 1 using ENSCO 8503*: Cobalt originally submitted this permit application on April 30, 2010. After the moratoriums were lifted, Cobalt resubmitted its

2

application on October 26, 2010. The Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE) returned the application to Cobalt on November 17 for further modifications—179 days after the date of original submission, and fourteen days after the moratoriums ended. Cobalt resubmitted its permit application on February 18, 2011. BOEMRE returned the application seven days later. From the original submission date to the date of this Order, the original application has been pending for over one year.

- *Cobalt's permit application to drill GB 959 Well No. 1, also using ENSCO 8503*: Cobalt submitted this application on November 3, 2010. Eighty-six days later the government returned the application for modifications. Cobalt resubmitted the application on February 28, 2001; BOEMRE returned it three days later for further modifications and notified Cobalt of other changes on March 9. Six months have passed since the original date of submission.

- *Nexen Petroleum U.S.A., Inc.'s permit application to drill GC 504 Well No. 1 using ENSCO 8502*: Nexen submitted its application on July 26, 2010. BOEMRE returned the permit application to Nexen on October 26, 2010 for modifications. Nexen resubmitted it the next day. BOEMRE returned the application to Nexen for further modifications eight days later. Nexen resubmitted its application on January 3, 2011. After fifty days, BOEMRE returned it to Nexen for further modifications. From the date of original submission, over nine months have passed.

- *Nexen's permit application to drill GC 327 Well No. 1, using ENSCO 8501*: Nexen submitted this permit application on October 12, 2010. The agency returned it to Nexen for modifications thirty-six days later. After resubmitting it on January 3, the agency returned it for further modifications about fifty days later. Nearly seven months have passed since the date of original submission.

- *Nexen's permit application to drill GC 872 Well No. 1, using ENSCO 8501*: Nexen submitted its application on October 12, 2010. BOEMRE returned it to Nexen for modifications thirty-six days later. Nexen resubmitted its application on January 20, 2011. The agency returned it for further modifications another thirty-six days later. Nearly seven months have passed from the original date of submission.

- *Noble Energy, Inc.'s permit application to drill GC 723 Well No. 1, using ENSCO 8501*: Noble submitted this permit

3

- application on October 26, 2010.  BOEMRE returned it to Noble for modifications eight days later.  Noble resubmitted the application on November 11, 2010; BOEMRE returned it to Noble six days later for further modifications.  Noble resubmitted the application on February 1, 2011, and BOEMRE returned it for further modifications on February 25, 2011.  Over six months have passed since the date of original submission.

- *Noble's permit application to drill MC 519 Well No. 2 using ENSCO 8501*:  Noble submitted this permit application on October 15, 2010.  After over four months, it was approved on February 28, 2011.

- *ATP's permit application to drill MC 941 Well No. 4*:  ATP submitted this permit application on October 29, 2010.  After nearly five months, the permit was approved on March 18, 2011.

- *ATP's permit application to drill GC 300 Well No. SS002*:  ATP submitted its application on November 8, 2010.  The agency returned the application to ATP, which resubmitted it on December 2, 2010.  The agency returned it for further modifications two months later, on February 2, 2011.  Two months later, it was approved.  From original submission to approval, the total delay was five months.[2]

The cross-motions for summary judgment reiterate many of the same arguments advanced at the preliminary injunction stage.  The government moves for summary judgment asserting that (1) the plaintiffs' challenge to the three permit applications which have been granted (which include the only two applications related to plaintiff ATP) is moot; (2) Ensco lacks standing to challenge the remaining applications; and (3) BOEMRE's review of the six remaining applications satisfies a rule of reason, for reasons this Court has previously rejected in granting the plaintiffs a

---

[2] ATP asserts that a third application pending before BOEMRE also suffers delays but is not the subject of this litigation.

4

preliminary injunction.³

The plaintiffs also move for summary judgment, maintaining as they did at the preliminary injunction phase that the government's delays are unreasonable.  Ensco continues to defend its standing to challenge in Count IV, and both plaintiffs assert that the three permit applications which BOEMRE has processed are not moot.

### Law & Analysis

#### I.  Standard of Review

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is

---

³   The government's most chilling and startling assertions are that no time constraints apply to it, that what is "reasonable" only the government can decide.

not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992).  He instead must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  <u>Id</u>.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987).

Before applying the summary judgment standard, the Court first considers the government's assertions of mootness and lack of standing.

## II.  Jurisdiction

### A.  Mootness

Because BOEMRE, during the pendency of this litigation, granted three of the nine applications forming the plaintiffs' challenge, the government contends that Count IV is, in part, now moot.  The plaintiffs concede that BOEMRE's approval moots their claim for injunctive relief on the three resolved permit applications, but assert that their request for declaratory relief saves their claims with respect to those applications under either

the "capable of repetition yet evading review" or the "voluntary cessation" doctrines.

1.

As the Court has previously summarized, to qualify as a case fit for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)) (internal quotation marks omitted). "A case becomes moot," and outside a federal court's review authority, "if (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Tex. Office of Pub. Util. Counsel v. F.C.C., 183 F.3d 393, 413-14 (5th Cir. 1999) (citing Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979)). "[W]hen the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated," it is no longer possible for the Court to grant any effectual relief to the prevailing party and "any opinion as to the legality of the challenged action would be advisory." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted).

But, "[a] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine

the legality of the practice." Sossamon v. Lone Star State of Tex., 560 F.3d 316, 324 (5th Cir. 2009). "[I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n.10 (1982) (internal quotations omitted). Such "'[a] case might become moot,'" however, "'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). A defendant claiming mootness based on its voluntary compliance "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 190.

Neither will a claim be moot when the challenged conduct is capable of repetition yet evades review. See Libertarian Party v. Dardenne, 595 F.3d 215, 217 (5th Cir. 2010). Under this exception to mootness, the plaintiffs must establish that (1) the challenged action is too short in duration to be fully litigated before cessation, and (2) there is a demonstrated probability or reasonable expectation, not just mere possibility, that they each will again be subject to the same action. Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008); Dardenne, 595 F.3d at 217. An action may be capable of repetition if there is evidence that an

agency's "actions reflect a policy or a consistent pattern of behavior that . . . [will] continue," or an agency's challenged "action [i]s prescribed by statute."  595 F.3d at 218.

2.

The plaintiffs' claims necessarily are limited to specific permit applications.  It is clear that the plaintiffs' claim for injunctive relief is moot as to the three application permits which have been granted.  Although the government has begun to issue some permit applications, plainly because of this lawsuit, the future of drilling in the Gulf of Mexico remains elusive; plaintiffs' other long-pending permit applications speak loudly to this.  Simply put, the government has not shown that "there is no reasonable expectation that the alleged violation will recur."  Pub. Util. Counsel, 183 F.3d at 413-14.  Moreover, the government's conduct of delay of deepwater drilling in the Gulf dramatically presents far more than mere possibility of persistent and repetitious intentional delays in processing ATP's and Ensco's permit applications, a challenge to which may evade review through the cyclical, eventually terminal, nature of the permitting process.  The government has presented no credible assurances that the permitting process will return to one marked by predictability and certainty.  Processing a scant few applications is at best a tactical ploy in a real world setting.  Out of an abundance of caution, and in light of the sensitive energy supply issues

national in implication that this case presents, the Court finds that plaintiffs' claim for declaratory relief as to the three permit applications which have been granted is not moot.

## B.  Standing

In its January 13, 2011 Order, the Court held that Ensco had prudential standing to challenge the government's delays on processing permit applications in which it held a stake. The government presents no arguments or evidence which persuade the Court that its decision does not apply equally today. Accordingly, the Court finds that prudential standing requirements are met.

The Court, however, never expressly addressed constitutional standing in any of its previous orders and does so now. The government disputes that Ensco satisfies the causation and redressability necessary to establish Article III standing with respect to Noble's, Nexen's and Cobalt's permit applications. Ensco defends that constitutional standing requirements are met.

### 1.  Standing under Article III

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing, at its "irreducible constitutional minimum," comprises three elements:  (1) injury in fact, (2) causation, and (3) redressability. Id. It is Ensco's burden to establish standing. Id. at 561.

<u>Injury</u>

That Ensco has suffered an injury in fact cannot be rationally disputed here: Ensco has received reduced rates from its customers, has received a force majeure notice from one customer whose permit application is at issue in Count IV, and has sent a Gulf of the Mexico rig several thousand miles to French Guiana.[4]

<u>Causation</u>

Causation amounts to "a causal connection between the injury and the conduct complained of-the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" <u>Id.</u> at 560 (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41-42 (1976)).

The government contends that causation is lacking because Ensco is only a subcontractor that has not alleged that its contracts allowed Noble, Nexen, or Cobalt to lower the rates paid to Ensco if the rigs were not in use or if anticipated permits had not been issued. The Court disagrees. Ensco's claimed injury

---

[4] The injury requirement also is satisfied for the same reasons the Court found prudential standing requirements are met. Although "[c]ourts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party," <u>Duran v. City of Corpus Christi</u>, 240 F. App'x 639, 641 (5th Cir. 2007), here the injury suffered by Ensco is direct and foreseeable, arising out of permit applications which expressly contemplate the use of Ensco's rigs, and thus meets minimal constitutional requirements. Its injury is no mere by-product of the injury to permit applicants, as the government suggests.

11

traces directly to the government's failure to act on pending permit applications contemplating the use of Ensco's rigs.

### Redressability

The redressability requirement assures that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561. The government contends that because granting Ensco the relief it seeks would be no guarantee that its permit applications would be granted, Ensco fails to show a favorable decision would redress its injury. But a case invoked by the government exposes the flaw in its reasoning. In West Virginia Association of Community Health v. Heckler, 734 F.2d 1570 (D.D.C. 1984), a government agency asserted that plaintiffs lacked standing to challenge the agency's distribution of federal funds. Because the agency had the discretion to distribute certain funds as it wished, the agency contended that if the plaintiffs succeeded on their claims, the funding they ultimately sought might be allocated to other individuals not party to the suit; thus, the argument went, the plaintiffs could not show that a favorable decision would redress their injury. The United States District Court for the District of Columbia rejected the agency's argument, validating the plaintiff's claim that its injury comprised not just funding that had not been distributed, but also the deprivation of the opportunity to compete for the withheld funding.

12

This reasoning conforms to Ensco's dilemma. Although it is obvious Ensco would prefer to have the permit applications underlying its claim granted, Ensco more broadly seeks predictability in the deepwater permitting scheme for the Gulf of Mexico, which would be gained by a favorable or unfavorable decision on the pending permit applications. By securing a decision, any decision, from the government on its contractors' permit applications within a reasonable time, Ensco may proceed in its business activities with certainty and clarity. Both of which are lacking now.

Having found the three granted permit applications not moot, and the standing requirements fully satisfied, the Court now turns to the merits of Count IV.

### III.  Merits

It bears repeating that Section 706(1) of the Administrative Procedure Act proclaims a national policy and requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1); see Telecommc'ns Research & Action Ctr. v. FCC, 750 F.2d 70, 79 (D.C. Cir. 1984) ("Claims of unreasonable agency delay clearly fall into that narrow class of interlocutory appeals from agency action over which we appropriately should exercise our jurisdiction."). But, a Section 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Id.

(emphasis in original); Section 706 vests federal courts with the discretion to decide whether agency delay is unreasonable "when an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time." <u>Forest Guardians v. Babbitt</u>, 174 F.3d 1178, 1190 (10th Cir. 1999).

The Court already has held that OCSLA, together with the APA, establishes a non-discretionary duty on the Department of the Interior to act, favorably or unfavorably, on drilling permit applications within a reasonable time. In its February 17, 2011 Order, the Court held that a reasonable time was thirty days, based on statutory touchstones. Here, review of the administrative record and the parties' briefing brings the Court to the same conclusion: agency action on the permit applications for deepwater drilling in the Gulf of Mexico is non-discretionary; a thirty-day timeline is reasonable and continues to apply.[5] The Court adopts its prior reasoning in full.[6]

---

[5] The thirty-day timeline is reasonable, in part because the government has failed to establish that the individual permit applications pending in this case individually require more (or less) care. The Court has repeatedly acknowledged that some delays are understandable in a more regulated environment, but that now, over a year after the Deepwater Horizon tragedy, delays must reach some end. Without evidence showing otherwise, a thirty-day timeline derived from the statute and past practices remains reasonable. And as this Court has previously explained, thirty days seems to have Congress's acknowledgment as reasonable within the statutory plan.

[6] Both parties now converge on a third option: Allowing the government to, within thirty days, return applications to the operators with clear instructions on what modifications are needed.

14

Because all nine permit applications have encountered delays ranging from four months to over one year, the government has unlawfully and improperly delayed a non-discretionary function under Section 706(1) of the APA.

Accordingly, IT IS ORDERED: The plaintiffs' motion is GRANTED; the government's motion is DENIED.

IT IS FURTHER ORDERED: The government shall act on the six pending permit applications within thirty days of this Order.

IT IS FURTHER ORDERED:  The government shall file a report with the Court not later than thirty days from this date on the status of each of the six pending permit applications.

AND IT IS ORDERED:  Plaintiffs shall submit a judgment consistent with this Order and Reasons within five days from this date.[7]

---

If it were not for already extensive delays, the Court might be open to considering this third option.  But over a year has passed since Deepwater Horizon; over six months have passed since the second moratorium was lifted.  The six remaining applications have been pending long enough, and have revolved more than once through BOEMRE's "iterative process."  And in several cases in the permit applications here, the agency did hold onto the application for more than thirty days before returning it to the applicant for modifications.  At some point this must end.  With a permit, or without.

[7] Count V remains pending and will be resolved according to the parties' jointly-submitted schedule for motion practice, approved by the Court on April 29, 2011.

New Orleans, Louisiana, May 10, 2011.

_____
                MARTIN L.C. FELDMAN
           UNITED STATES DISTRICT JUDGE