UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ENSCO OFFSHORE CO., ET AL                    CIVIL ACTION

VERSUS                                       NO. 10-1941

KENNETH LEE SALAZAR, ET AL                   SECTION "F"

ORDER & REASONS

Before the Court are cross-motions for summary judgment on Count V of the second amended complaint. For the following reasons, the Court DENIES the plaintiffs' motion and GRANTS the government's motion.

**Background**

This is the final chapter in this Court's review and its many decisions regarding the challenge to government-forced delays to drilling activities in the Gulf of Mexico.

Counts I and II, challenging the government's imposition of successive blanket moratoriums on deepwater drilling, were dismissed as moot, after the government technically lifted the bans. The Court held that the government's new safety requirements, challenged in Count III, were unlawful because the government failed to provide the statutorily-required notice and opportunity for comment. The Court dismissed Count VI, finding that the government could lawfully require applications for permits to drill in connection with deepwater production and development activities in the western Gulf of Mexico (so long as it did not

1

impose this requirement as a means to intentionally delay drilling, as was charged in Count IV). As to Count IV, the Court entered a permanent injunction, which required the government to act on certain deepwater drilling permit applications within thirty days; the government and Ensco Offshore Co. later reached a full settlement of Ensco's claims in this case, and the injunction was vacated as the parties had jointly requested.

Only ATP Oil & Gas Corporation's challenge in Count V remains. ATP entered the lawsuit after it was originally filed by Ensco. Count V broadly alleges that the government exceeded its authority under the Outer Continental Shelf Lands Act (OCSLA) and the Administrative Procedure Act (APA) by requiring Development Operations Coordination Documents (DOCDs) for drilling permits in the western Gulf of Mexico. As this Court has previously explained, this challenge is necessarily limited to the approval of DOCDs in which ATP has alleged unlawful delay.

In the second amended complaint, ATP expressly charges delay in the re-approval process of its preexisting DOCD for operations in the Mississippi Canyon (MC) 941 and 942 lease blocks. The status of this DOCD became unclear after the government imposed the sweeping moratoriums that officially stalled deepwater drilling for many months. ATP identified at least one drilling permit that suffered the challenged delays as a result of this DOCD not being approved. After this Court ordered a preliminary injunction on the

permit applications underlying Count IV, BOEMRE approved that ATP permit on March 18, 2011. And, after filing the second amended complaint, the government informed ATP that it was not required to amend its DOCD after all; because ATP amended its oil spill response plan as requested, the government announced that ATP's DOCD complied with all relevant requirements and would not have to be amended.

ATP focuses its displeasure now not on the MC 941/942 DOCDs, but rather on its DOCD for other operations, those for the MC 711 lease block.[1] But this DOCD was approved in January 2007. A modification to that DOCD was approved in July 2007. Later, on September 23, 2010, ATP filed a supplemental DOCD with BOEMRE to secure approval of additional development operations for MC 711. Over the next twenty-five days, BOEMRE made at least four separate requests for additional information, with which ATP apparently complied. More requests for information followed in the next several months, and, as of May 16, 2011, the supplemental DOCD had not been approved.

---

[1] Although ATP claims delays stretching over the past eight months, there is no mention of this DOCD in the second amended complaint. It appears that the first time ATP has mentioned this DOCD is in the briefs currently pending before the Court, which were submitted earlier this month. ATP also alleges that its claim is based on several other operators' DOCDs pending before BOEMRE that do not relate to ATP. ATP concedes as much. The Court cautions that the Court's focus is necessarily limited to those DOCDs which are challenged based on their recent application to ATP. ATP's standing to raise these other claims is presently unfocused.

The Court previously found that ATP's assertions of recent, possibly unlawful delays to the DOCD approval or modification process as it related to its DOCDs facially provided the basis for its as-applied challenge to Interior's regulations requiring DOCDs in the western Gulf; and observed ATP's claim that Interior, by requiring re-approval of already-approved DOCDs, has perhaps applied the regulations in a manner that conflicts with OCSLA. The Court denied the government's motion to dismiss on the basis of sovereign immunity. And, the Court later denied cross-motions for summary judgment because accusations of intentional delay in the DOCD approval process left open the question of reasonableness under Chevron's framework. In denying summary judgment, however, the Court acknowledged that, standing alone, it was also possible that a DOCD requirement for drilling in the western Gulf is not "arbitrary, capricious, or manifestly contrary to the statute."

The Court asked the parties to clarify questions of jurisdiction. Responding to this request and focusing on the question of intentional delay, the parties again move for summary judgment on Count V.

**Law & Analysis**

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to

judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that mere argued existence of a factual dispute does not defeat an otherwise properly supported motion: "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). It must instead come forward with competent evidence, such as affidavits or depositions, to buttress its claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). In evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.  OCSLA

As this Court has previously written, Congress enacted OCSLA in 1953, and amended it significantly in 1978.  See Pub. L. No. 95-372, 92 Stat 629 (Sept. 18, 1978).  As amended, OCSLA establishes a national policy to make the Outer Continental Shelf "available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs."  43 U.S.C. § 1332(3) (2006).

OCSLA separates offshore leasing into four distinct phases: (1) the Department of Interior's formulation of a five-year leasing plan; (2) lease sales; (3) exploration by the lessees; (4) development and production.  Sec'y of Interior v. Cal., 464 U.S. 312, 337 (1984).  "Each stage involves separate regulatory review that may, but need not, conclude in the transfer to lessees of rights to conduct additional activities on the OCS.  And each stage includes specific requirements for consultation with Congress, between federal agencies, or with the States."  Id.

Relevant to the Court's inquiry here is the fourth stage, development and production.  Development and production occur only if oil or gas is discovered in paying quantities during exploration.  43 U.S.C. § 1351.  In most cases, this phase requires the lessee first to submit a planning document, the development and production plan (DPP), to the Department of Interior.  464 U.S. at

340. OCSLA does not mandate application of a DPP requirement on Gulf of Mexico leases, see 43 U.S.C. § 1351(a), but grants the Secretary discretion, which he has exercised, to impose the requirement in the Florida Gulf.[2] See id. § 1351(l).

The statute expansively directs the Secretary of Interior to

> prescribe such rules and regulations as may be necessary to carry out [leasing] provisions. The Secretary may at any time prescribe and amend such rules and regulations as he determines to be necessary and proper in order to provide for the prevention of waste and conservation of the natural resources of the outer Continental Shelf, and the protection of correlative rights therein, and, notwithstanding any other provisions herein, such rules and regulations shall, as of their effective date, apply to all operations conducted under a lease issued or maintained under the provisions of this subchapter.

Id. § 1334(a). It is based on this general authority that the Secretary imposed a DOCD requirement in the western Gulf of Mexico. Implemented on the heels of the 1978 Amendments, the practice has been continuously in place since 1983, has survived multiple amendments, and faced no court challenge until recently. The Court has recounted this history during the course of this lawsuit. The Court has acknowledged that the DPP and the DOCD serve similar

---

[2] The regulations distinguish between the eastern and western portions of the Gulf. The "Eastern Gulf of Mexico means all OCS areas of the Gulf of Mexico the Director decides are adjacent to the State of Florida" (what the Court refers to as the Florida Gulf throughout this Order), and the "Western Gulf of Mexico" comprises "all OCS areas of the Gulf of Mexico except those the Director decides are adjacent to the State of Florida." 30 C.F.R. § 250.105.

purposes, and the Court has earlier concluded that the DOCD requirement is not unreasonable, as long as it is not used as an agent of intentional delay.

### III. Jurisdiction and Justiciability

The government disputes this Court's authority to reach the merits of Count V. Because ATP challenges a planning document used for the development and production phase, the government contends jurisdiction is proper only with a court of appeals. The government also asserts that ATP's claim is moot.[3]

### A. Appellate Jurisdiction

The 1978 jurisdictional statutes that breathe life into judicial review are at best imperfect.

Section 1349(c)(2) of OCSLA instructs:

> Any action of the Secretary to approve, require modification of, or disapprove any exploration plan or any development and production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located.

43 U.S.C. § 1349(c)(2).

But, Section 1349(b) provides:

> [T]he district courts of the United States shall have jurisdiction of cases and

---

[3] The government disputes, but the plaintiffs do not contest, that Ensco lacks standing under Count V. Ensco and the government have now reached a settlement agreement resolving all of Ensco's claims; therefore, Ensco's standing is no longer at issue. The Court finds that standing requirements for ATP are also met for the same reasons.

> controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals. . . . Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

Id. § 1349(b). Here, the dispute centers on perceived intentional delay in the permitting process.

Although Count V challenges delays to the approval of a DOCD rather than to a DPP, the government contends that in enacting § 1349(c), Congress manifested its intent to have a class of claims—that is, challenges to all planning documents for oil and gas development on the Outer Continental Shelf—reviewed first and only in the courts of appeals; the government reasons that to hold that certain planning documents fall under that provision, while others do not, would create an unmanageable review process. The government glosses over the extensive reach of § 1349(b).

In its April 6, 2011 Order as to Count V, the Court noted that it is not implausible, or improper, under OCSLA's scheme that the Secretary would use his regulatory authority over drilling in exploration, development, and production activities to impose a DPP-like requirement in the western Gulf (the DOCD). Responding to the government's assertion that DOCDs are an efficient and effective way for operators and BOEMRE to ensure that all statutory

requirements are met in the development and production stage, this Court observed that the DOCD requirement seems to date to 1983 and has been continuously retained since that time. See 48 Fed. Reg. 55565; 53 Fed. Reg. 10608-10609. While reserving judgment on the merits of Count V, the Court noted that a DOCD requirement, standing alone (without the backdrop of intentional delay), is likely not "arbitrary, capricious, or manifestly contrary to the statute." From the Court's prior review, it is clear that the DPP and DOCD, while based on separate statutory authority, serve strikingly similar purposes and are now governed by the same administrative regulations in most circumstances. But does the inherent similarity between the DPP and DOCD divest this Court of jurisdiction?

That is a novel question. The statutes inartfully suggest that an appellate court's original jurisdiction under § 1349(c)(2) extends only to exploration plans and development and production plans, meaning those documents *called* "exploration plans," see 43 U.S.C. § 1340, and *called* "development and production plans." See id. § 1351. But could they instead simply reflect the anomalous nature of the DOCD rather than evince Congressional intent to leave review of DOCDs with the district courts? Could it be that OCSLA's jurisdictional assignments, instead of meaning to limit original appellate jurisdiction under § 1349(c)(2) to those documents called "exploration plans" and "development and production plans,"

10

effectively corral all planning documents formed at the exploration and development and production phases? Be it an exploration plan, DPP, or a DOCD?

This Court thinks not. A reasonable read of the totality of Section 1349, and the special nature of the DOCD, leads the Court to conclude that Section 1349 does not refer *original review* of the specialized DOCD to the various appellate courts when intentional delay is a claim. Any other reading would require this Court to stretch its constitutional reach. In excluding from the western Gulf an express DPP requirement in OCSLA's 1978 Amendments, Congress acknowledged that the western Gulf was special; here, drilling practices had developed to a greater level of sophistication than in other parts of the country, and Congress did not wish to interrupt longstanding practices, which had proven effective. Over time, relying on other statutory bases, Interior developed regulations to impose a DOCD requirement in the western Gulf. See 48 Fed. Reg. 55565. Interior found that some sort of coordination document for operations would be helpful in regulating the western Gulf and crafted the DOCD in the face of industry arguments that the 1978 Amendments precluded such a requirement in the western Gulf. See id. And for nearly thirty years, over the course of several amendments, even after the adoption of DOCDs as a precondition to a drilling permit in the western Gulf, Congress responded to this requirement with silence. For the most part, the

DOCD requirement seems to have served its role capably.  It is only recently that anyone has challenged its validity and application in the courts.[4]

The fact that Congress could have, but did not, amend § 1349 to expressly extend the appeals courts' original jurisdiction to review of the DOCD, especially in the face of possible intentional delay in the approval process, suggests to the Court that Congress did not intend to deviate from its longstanding understanding that development and production in the western Gulf is somehow different, that their treatment, while often similar to that in other regions within federal control, is regarded as a peculiar creature subject to OCSLA's express but generic commands and more specific requirements of original review and delay developed in the regulations; thus leaving original jurisdiction with this Court under 1349(b)'s expansive jurisdictional thrust.  Any statutory flaws in treatment is for Congress to resolve.

---

[4] DOCDs have surfaced only tangentially in one other case. A recent opinion of Chief Judge Steele of the Southern District of Alabama referred to "the well-settled principle that federal district courts are not empowered under the OCSLA to review BOEMRE's approval of exploration, development and production plans for lessees whose bids have previously been accepted," and posited that if a claim had involved the government's approval of both DOCDs and exploration plans (the court concluded it did not), original jurisdiction over the claim would lie with the Court of Appeals. Defenders of Wildlife v. BOEMRE, No. 10-0254, 2011 WL 2013977, at *4, n.10 (S.D. Ala. May 23, 2011).  While it is well-settled that the approval of both exploration plans and DPPs vests jurisdiction with the Courts of Appeals, neither the statute nor the courts have addressed the fate of original review of DOCDs under Section 1349 when unlawful delay is charged.

Finding that it may exercise original jurisdiction over the question of delays of approval to DOCDs, the Court turns to the question of mootness.

B.  Mootness

1.

As the Court has previously summarized, to qualify as a case fit for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)) (internal quotation marks omitted).  "A case becomes moot," and outside a federal court's review authority, "if (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Tex. Office of Pub. Util. Counsel v. F.C.C., 183 F.3d 393, 413-14 (5th Cir. 1999) (citing Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979)).  "[W]hen the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated," it is no longer possible for the Court to grant any effectual relief to the prevailing party and "any opinion as to the legality of the challenged action would be advisory." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted).

13

But, a claim is not moot when the challenged conduct is capable of repetition yet evades review. See Libertarian Party v. Dardenne, 595 F.3d 215, 217 (5th Cir. 2010). Under this exception to mootness, ATP must establish that (1) the challenged action is too short in duration to be fully litigated before cessation, and (2) there is a demonstrated probability or reasonable expectation, not just mere possibility, that ATP will again be subject to the same action. Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008); Dardenne, 595 F.3d at 217. An action may be capable of repetition if there is evidence that an agency's "actions reflect a policy or a consistent pattern of behavior that . . . [will] continue," or an agency's challenged "action [i]s prescribed by statute."[5]  595 F.3d at 218.

2.

The government contends that Count V is moot because, as articulated in the second amended complaint, Count V challenges only a DOCD for ATP's MC 941/942 leases for which no amendment is required and for which at least one drilling permit has issued. ATP's real complaint is better targeted toward generic government inefficiencies which have caused delays. The government stresses that ATP has not alleged in its complaint that BOEMRE's processing

---

[5] "A defendant's voluntary cessation of a challenged practice" also "does not deprive a federal court of its power to determine the legality of the practice." Sossamon v. Lone Star State of Tex., 560 F.3d 316, 324 (5th Cir. 2009). Neither party addresses this exception in its briefing.

of any other pending permit applications will be delayed due to the need to revise any other pending DOCD.

ATP responds that Count V was neither pled nor briefed as a challenge to only one pending DOCD. ATP asserts that there are dozens of DOCDs currently pending before the agency, including at least one other submitted by ATP. In Count V, ATP asserts that it did not intend to limit its challenge to the effect of the DOCD requirement only on ATP's applications for permits to drill connected with MC 941/942. And, so, ATP asserts, Count V is not moot because ATP's DOCD for MC 711 has been needlessly and unreasonably delayed since September 2010. ATP's argument is unpersuasive.

3.

ATP has not shown that the claim alleged is capable of repetition but will evade this Court's review.[6] It is true that in the second amended complaint, ATP broadly alleges delays with respect to its DOCDs, naming only one DOCD, but not precluding a cause of action based on others such as the one it raises now. That the MC 941/942 DOCD eventually needed no amendment seems a mere fortuity and does not dissolve the overarching cause of action ATP pled. However, the claim faces a different obstruction: ATP has not articulated more than a mere possibility that the problem

---

[6] The government has proven the threshold requirements of mootness, because as pled in ATP's second amended complaint, Count V is fully resolved.

alleged can be traced to intentional delay in the permitting process.  ATP's argument that, because the Court found BOEMRE delayed MC 941 permits, it should ask whether the DOCD requirement was part of some intentional plan to delay, merely highlights that ATP's real concern lies in its repugnance to the permitting process rather than with possible delays in the DOCD reapproval process.  The Court is not persuaded that this is a controversy capable of repetition yet evading review.

　　　　IT IS ORDERED: Count V is DISMISSED.  The government's motion is GRANTED; ATP's motion is DENIED.[7]

　　　　　　　　　　New Orleans, Louisiana, June 20, 2011.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　MARTIN L.C. FELDMAN
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[7] In its prior decisions, the Court has, with compelling reasons, expressed its concern about the bona fides of the government's conduct and its representations to this Court.  Now that the government has, a year after its obstacles to deepwater drilling in the Gulf, agreed to a consent judgment with Ensco, the Court assumes that it will view the terms of that agreement as expressive of its attitude toward ATP's submissions as well.