UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENSCO OFFSHORE CO., ET AL | CIVIL ACTION |
| VERSUS | NO. 10-1941 |
| KENNETH LEE "KEN" SALAZAR, ET AL | SECTION "F" |

ORDER & REASONS

Before the Court is the plaintiff ATP Oil & Gas Corporation's motion for costs. For the following reasons, ATP's motion is GRANTED in part and DENIED in part.

**Background**

On January 13, 2011, ATP Oil & Gas Corporation joined this broad challenge, initiated by Ensco Offshore Company, to the government's unlawful administrative delays on deepwater drilling in the Gulf of Mexico. The very damaging delays were in part the result of the Interior Department's blanket bans on deepwater drilling after the BP tragedy. Final judgment having been entered, ATP now moves for costs on Count IV of its second amended complaint.

I.

Count IV challenged the government's delay in processing nine permit applications to conduct deepwater drilling activities in the Gulf of Mexico. In Count IV, ATP and Ensco charged the government with unreasonable delay under § 706(1) of the Administrative Procedure Act. On January 13, 2011, the Court held that Count IV

1

stated cognizable claims under the APA because it limited its challenge to delays in specific permit applications, rather than the entire program of permitting, thus allowing Count IV to proceed.

The Court next ordered a preliminary injunction on Count IV and required the government to grant or deny five specific permit applications within thirty days.[1] The Court held that the APA, together with the Outer Continental Shelf Lands Act, imposed on the federal government a non-discretionary duty to act on permit applications within a reasonable time, which the Court found to be thirty days. In the face of OCSLA's silence, the Court relied in part on considerations such as past government practices in which permits were processed within two weeks. The Court also considered the question of whether requiring actions on some permits would simply shift the burden of delays to other permit applicants and also discerned a separate requirement within OCSLA that Interior must act upon exploration plans within thirty days.[2] Because the permit applications at issue in this case had suffered delays of at least thirty days, the Court found that the plaintiffs were

---

[1] The Order was amended to add three more permit applications belonging to ATP on March 1.

[2] The Court's Order of preliminary injunction is on appeal. Although the U.S. Court of Appeals for the Fifth Circuit stayed the preliminary injunction order pending its expedited review, the appeal was stayed on May 20, 2011 to allow the parties to make a determination as to whether the appeal is moot.

substantially likely to show success on the merits of their claim.

And, eventually, they did succeed. Based on the same reasons it ordered a preliminary injunction, the Court granted summary judgment for the plaintiffs on May 10, 2011, finding that the government had unreasonably delayed the processing of nine permit applications, including the only two belonging to ATP, which had already been granted. At the plaintiffs' request, the Court entered a partial final judgment on May 20, 2011 to address only Count IV.[3]

The judgment states in part:

> That it is declared that the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331 et seq., together with the Administrative Procedure Act, establishes a nondiscretionary duty on the Department of the Interior to act on OCSLA drilling permit applications within a reasonable time;
> . . .
> That Defendants are permanently enjoined, and pursuant to 5 U.S.C. § 706(1) compelled, to either approve or deny each of the six unapproved permit applications at issue in this case (i.e., the first six applications listed in footnote 1 above) within 30 days of May 10, 2011, or, if any such application is

---

[3] On June 8, 2011, only Ensco reached a settlement of its claims with the government. Their agreement required the government to act on specific permit applications within thirty days, but varied the requirements of the Court's permanent injunction. Under the terms of the Settlement Agreement, the settling parties moved the Court to enter a consent decree incorporating the terms of the Settlement Agreement. The Court vacated the permanent injunction as moot, amended the final judgment on Count IV to remove its injunctive aspects, and dismissed Ensco's remaining claims on June 16, 2011, all as jointly requested.

>     not currently pending because it has been
>     returned to the applicant, within 30 days of
>     the next resubmission of such application;

## II.

ATP now moves for costs on Count IV under OCSLA. ATP requests attorney's fees of $402,132.50, as well as $4,227.45 in costs related to deposition transcription and the transcription of the January 12, 2011 hearing.

The government concedes that ATP is entitled to costs of $4,227.45 under the Equal Access to Justice Act, 28 U.S.C. § 2412(a), but disputes ATP's entitlement to attorney's fees under OCSLA. The government asserts that OCSLA's waiver of sovereign immunity for costs does not apply in this case.[4] This Court reluctantly agrees.

### **Law & Analysis**

## I.

Absent an express waiver, sovereign immunity shields the government from an award of attorney fees. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983); Boehms v. Crowell, 139 F.3d 452, 462-63 (5th Cir. 1998).

>     [W]aivers of federal sovereign immunity must
>     be "unequivocally expressed" in the statutory
>     text. "Any such waiver must be strictly

---

[4] The government also asserts that even if the waiver could apply, ATP has not met preconditions for suit under OCSLA. The government alternatively maintains that a request for attorney's fees is not timely under the Federal Rules of Civil Procedure. The Court need not reach these arguments.

> construed in favor of the United States," and not enlarged beyond what the language of the statute requires. But just as "'we should not take it upon ourselves to extend the waiver beyond that which Congress intended [,] ... [n]either, however, should we assume the authority to narrow the waiver that Congress intended.'"

United States v. Idaho ex. rel. Dir., Dep't of Water Res., 508 U.S. 1, 6-7 (1993) (internal citations omitted). ATP bears the burden of showing Congress's unequivocal waiver of sovereign immunity. Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009).

The OCSLA provision on which ATP relies provides a limited waiver of the government's sovereign immunity for costs:

> A court, in issuing any final order in any action brought pursuant to [43 U.S.C. § 1349(a)(1) or 43 U.S.C. § 1349(c)], may award costs of litigation, including reasonable attorney and expert witness fees, to any party, whenever such court determines such award is appropriate.

43 U.S.C. § 1349(a)(5).

An obstacle immediately apparent is that Count IV, by its terms, is not an "action brought pursuant to [43 U.S.C. § 1349(a)(1) or 43 U.S.C. § 1349(c)]." See 43 U.S.C. § 1349(a)(5). The plaintiffs' second amended complaint necessarily describes Count IV as one under § 706(1) of the APA.[5] In fact, each count of

---

[5] It is true that OCSLA's citizen suit provision is addressed—cursorily—as an alternative basis of jurisdiction, but it was never forcefully invoked in this litigation until now. But, as the Fifth Circuit has held, "Congress [did not] intend[] for the citizen suit provision to operate either as a means of obtaining 'umbrella' review for a series of agency decisions that were or

5

the second amended complaint was framed as one under a provision of the APA, not under OCSLA's citizen suit provision.

Does it make a difference if this is the sort of action that could have been brought under the asserted provisions? Count IV is ineligible for categorization under § 1349(c), which allows certain challenges within the courts of appeals. Id. § 1349(c)(2). However, it (nearly) seems to fit within the express terms of § 1349(a)(1):

> [A]ny person having a valid legal interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this subchapter against any person, including the United States, and any other government instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution) for any alleged violation of any provision of this subchapter or any regulation promulgated under this subchapter, or of the terms of any permit or lease issued by the Secretary under this subchapter.

ATP had "a valid legal interest which is or may be adversely affected"—delays to its permit applications—and "commence[d] a civil action on his own behalf"—this one—which was "to compel [the government's] compliance"—but not with OCSLA. Count IV sought

---

will be otherwise subject to judicial review under the APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency." OXY USA, Inc. v. Babbitt, 122 F.3d 251, 258 (5th Cir. 1997). It would seem that under this rationale, to implicate OCSLA's attorney's fees provision would demand more than mere assertion of OCSLA's citizen suit provision as an alternative basis of jurisdiction.

compliance with the APA, which prohibits unreasonable delay.

Disregarding for a moment this seeming technicality, this Court cannot ignore that in resolving Count IV, the Court relied on duties implied in OCSLA. The underlying violation did not arise exclusively out of the APA's prohibition on unreasonable delay; it also flouted OCSLA's policy mandate of expeditious development. This seems to present a novel question: Can the Court award fees under OCSLA when the cause of action pursued expressly arose out of the APA alone, even if one may find its substance from OCSLA's silent, but implicit, mandates?

## II.

ATP's sole argument seems to be one of bewilderment that the government would dispute its entitlement to attorney's fees. While it maintains that OCSLA's waiver of sovereign immunity applies to ATP's claim because ATP alleged that it was harmed by the government's unreasonable delay in processing permit applications, it provides no example in the case law which supports its position; and, its argument that its claims arise out of its status as a leaseholder simply supports that it had standing to raise Count IV under the APA's zone-of-interests test. ATP has not met its burden. See Freeman, 556 F.3d at 334.

This conclusion does not eviscerate OCSLA's fee provision; it simply affirms that OCSLA allows attorney's fees in limited circumstances not present here. Count IV successfully asserted an

7

APA claim, and the remedy of a preliminary injunction arose out of this success.  The government's abusive conduct notwithstanding, Count IV did not purport to rely on OCSLA's citizen suit provision and this Court owes fidelity to the statutory text.  The Clerk will enter judgment.

                New Orleans, Louisiana, August 29, 2011.

                        _____
                           MARTIN L.C. FELDMAN
                       UNITED STATES DISTRICT JUDGE